In re Norman V. LEONARD, Debtor.

Henry BISHOP, Plaintiff,

v.

UNITED STATES of America INTERNAL REVENUE SERVICE and Richard Belford, Trustee, Defendants.

Bankruptcy No. 5–85–00136.
Adv. No. 5–88–0077.

United States Bankruptcy Court,
D. Connecticut.

Oct. 2, 1991.

---

James C. Graham, Pepe & Hazard, Hartford, Conn., for plaintiff.

Merrel B. Green, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant U.S.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff, Henry Bishop, seeks a Declaratory Judgment that the Internal Revenue Service (IRS), as holder of three claims against the debtor, must apply the proceeds from the liquidation of the debtor's estate to its claims on a pro rata basis.

### I.

In 1984, Bishop became an officer in a Connecticut business known as Consolidated Graphics, Inc. ("Consolidated"), in which Robert McLeod and the debtor were also officers. Consolidated failed to pay federal withholding taxes during the last two quarters of 1984 and the first quarter of 1985. The debtor and McLeod were also officers in two other Connecticut business ventures, to wit, Norman Leonard Enterprises, Inc. ("NLE") and Ye Olde Quick Copy of Wolcott, Inc. ("Quick Copy"). Both of these businesses failed to pay federal withholding taxes for the years 1983 and 1984. As a result, the IRS designated the debtor, Bishop, and McLeod as "Responsible Persons" under 26 U.S.C. § 6672 and assessed "trust fund" withholding tax liability.[1]

On March 6, 1986 the debtor filed a voluntary chapter 7 petition in this court. On April 16, 1986, the IRS filed a proof of claim, which after amendment on October 14, 1987, stated a claim against the debtor as follows:

| | |
|---|---|
| NLE | $9,683.06 |
| Quick Copy | $32,041.96 |
| Consolidated | $25,581.97 |

Liquidation of the debtor's estate yielded $39,378.37, which after payment of administrative expenses was reduced to $37,891.60 (the "fund"). As the fund is not otherwise encumbered, the entire balance is available for distribution to the IRS.

On June 28, 1988, Bishop filed the instant adversary proceeding for a declaratory

---

1. "Trust fund" liability arises for withholding taxes not timely paid, since such money is deemed to be held in trust for the United States. 26 U.S.C. § 7501(a) (1982).

judgment that the IRS must allocate the fund on a pro rata basis among all three entities, thereby reducing the plaintiff's responsible person liability on account of Consolidated.[2] On July 10, 1989, the IRS filed a motion to dismiss this adversary proceeding. On March 28, 1990, the IRS filed a motion to dismiss this adversary proceeding. On March 28, 1990, in a ruling which denied that motion, I concluded that "[T]he IRS has three, not one, claims against the debtor." *Bishop v. IRS (In re Leonard)*, 112 B.R. 67, 71 (Bkrtcy.D.Conn. 1990). I further stated that,

> When a taxpayer makes an involuntary payment, tax regulations permit the IRS to allocate that payment in its discretion.... Thus, absent Code § 726(b) the IRS could allocate the fund and this court would not have jurisdiction to rule on the allocation.

*Id.* at 69, n. 6, citing *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983) and *In re Vermont Fiberglass, Inc.*, 88 B.R. 41, 43–44 (Bkrtcy.D.Vt.1988).

On May 9, 1990, Bishop filed a Motion for Summary Judgment, arguing that as a matter of law, the IRS must allocate the fund pro rata among all three claims pursuant to § 726(b), which provides:

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6) or (7) of section 507(a) of this title ... shall be made pro rata among claims of the kind specified in each particular paragraph....

I denied that motion on September 25, 1990, holding that,

> [E]xcept under circumstances not relevant here, § 726(b) was intended to insure that holders of claims at the same priority or distribution level be treated equally, so that one does not benefit at the expense of another. Therefore it does not follow as a matter of law that § 726(b) is applicable when there is only one creditor even if that creditor has more than one claim.

**2.** If, as Bishop avers, the IRS must allocate the funds from the debtor's estate to the three claims, his responsible person liability will be reduced by approximately $14,400. This figure

*Bishop v. U.S. (In re Leonard)*, Case No. 5–85–00136 (Bkrtcy.D.Conn.1990).

For the reasons that follow, I conclude that judgment should enter in favor of the defendants.

## II.

■ The issue of whether the IRS must allocate the fund on a pro rata basis centers on whether § 726(b) is applicable when there is only one creditor.

Bishop argues that since the language of § 726(b) refers to "claims" and not "creditors", that subsection should apply in this case where there are three claims. I disagree, as I did in ruling on Bishop's motion for summary judgment. *See infra.*

It is a well established principle of statutory construction that a statute must be interpreted in light of its intended purpose. *E.g. Gonzalez v. Young*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *see also In re City of Bridgeport*, 128 B.R. 688, 694 (Bkrtcy.D.Conn.1991), quoting, *Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) ("In determining the meaning of a statute, we look not only to the particular language, but to the design of the statute as a whole and to its object and policy"). In ruling on Bishop's motion for summary judgment, I observed,

> The legislative history of § 726(b) reveals that it was to "apply of course, only when there are inadequate funds to pay the *holders* of claims of a particular class in full." (emphasis added). H.R.REP. NO. 95–595, 95th Cong.2d Sess. 383–384, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS, 6339–6340. In the same vein, the Supreme Court recently observed that "[e]quality of distribution among *creditors* is a central policy of the Bankruptcy Code. According to that policy, *creditors* should receive pro rata shares of the debtor's property." *Begier v. Internal Revenue Service*, — U.S. ——, 110 S.Ct.

is arrived at by multiplying the fund ($37,-891.60) by 38.01%, the ratio of the Consolidated liability to the debtor's total liability.

2258, 2262–63, 110 L.Ed.2d 46 (1990). (emphasis added) Thus, it appears that except under circumstances not relevant here, § 726(b) was intended to insure that holders of claims at the same priority or distribution level be treated equally, so that one does not benefit at the expense of another.

*Bishop v. U.S. (In re Leonard)*, Case No. 5–85–00136, p. 4–5 (Bkrtcy.D.Conn.1990).

I continue to conclude that there is no legislative support for Bishop's argument that when there is only one creditor with multiple claims, those claims must be treated as if they were held by different entities and that a pro rata distribution must be made under § 726(b).

 Bishop also argues that the equities of this case favor a pro rata distribution and that this court should use § 105(a) to effect that result. Again, I disagree. Bishop has not shown, nor can he, that a distribution favoring him at the expense of the IRS is equitable. Moreover, the use of § 105(a) would be inappropriate.

Code § 105(a) is intended to permit the court to enter orders that are "necessary or appropriate to carry out the provisions of ... title [11]," not rewrite the Code and create new rights.

*In re Key Book Service, Inc.*, 103 B.R. 39, 40, n. 2 (Bkrtcy.D.Conn.1989).

### III.

Accordingly, Bishop is not entitled to a declaratory judgment that the IRS must allocate the fund on a pro rata basis, judgment shall enter in favor of the defendants and

IT IS SO ORDERED.